## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| LAUREN PIETRANGELO, *individually, and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> MAVIS TIRE SUPPLY LLC d/b/a MAVIS DISCOUNT TIRE <br><br> Defendant. | **Case No. 7:25-cv-8740** <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **[JURY TRIAL DEMANDED]** |

Plaintiff Lauren Pietrangelo ("Plaintiff"), by and through her undersigned counsel, on behalf of herself and a class of all other similarly situated persons, files this Class Action Complaint against Mavis Tire Supply LLC d/b/a Mavis Discount Tire ("Mavis" or "Defendant"). Plaintiff's allegations are made based upon personal knowledge, her own acts, and upon information and belief and investigation of counsel, as to all other matters.

### I.  NATURE OF THE ACTION

1.       Plaintiff brings this action against Defendant for its failure to properly secure and safeguard highly valuable, protected, personally identifiable information and for its failure to comply with industry standards to protect information systems that contain and/or are utilized to transfer PII. Plaintiff has been, and continues to be, harmed as a result of Mavis's failure to properly secure and safeguard its customers highly valuable, protected, personally identifiable information including, *inter alia*, customers' names, addresses, dates of birth, credit card information, license plate numbers, and more (collectively, "PII" or "Personal Information"); and for its failure to comply with industry standards to protect information systems that contain PII.

2.     Defendant is a national leader in tire and automotive services, offering a wide variety of tires, wheels and auto parts while also providing vehicle maintenance services such as brakes, oil changes and alignment. Defendant has over 700 service centers across several states.[1]

3.     Plaintiff and Class Members were required to provide their PII to Defendant as a condition of purchasing goods, without which Defendant could not perform its regular business activities.

4.     As such, Defendant stores a litany of highly sensitive personal identifiable information ("PII") about its current and former customers. Defendant lost control over that data when cybercriminals infiltrated its insufficiently protected computer systems in a data breach (the "Data Breach").

5.     Upon information and belief, on or about September 23, 2025, Defendant was the victim of a ransomware attack by Wordleaks,[2] an internationally known group of cybercriminals that focuses on stealing sensitive data and then threatening to release it unless a ransom is paid.[3]

6.     To date, Defendant has not issued a public disclosure about the Data Breach.

7.     Despite acknowledging that ransomware "threats against [its] business are real,"[4] Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII. Defendant's failures have

---

[1] Our Story, MAVIS TIRE (2025), https://www.mavis.com/about-us/ (last visited Oct. 20, 2025).

[2] Ransomware Group Worldleaks Hits: Mavis Tire Supply, HOOKPHISH (Oct. 20, 2025), https://www.hookphish.com/blog/ransomware-group-worldleaks-hits-mavis-tire-supply (last visited Oc. 20, 2025).

[3] World Leaks: An Extortion Platform, Lexfo (May 20, 2025), https://blog.lexfo.fr/world-leaks-an-extortion-platform.html (last visited Oct. 20, 2025).

[4] Mavis Tire Puts the Brakes on Ransomware Attacks, SONICWALL (2018), https://www.sonicwall.com/resources/case-studies/mavis-tire-puts-the-brakes-on-ransomware-attacks (last visited Oct. 20, 2025).

placed the Class's PII in a vulnerable position—rendering them easy extortion targets for cybercriminals.

8.    As a direct and proximate result of Mavis's negligent failure to implement reasonable data security measures, Plaintiff's and Class members' full names, addresses, dates of birth, license plate numbers, and other valuable PII are now in the hands of cyber criminals.

9.    Plaintiff and Class members are now at a significantly increased and certainly impending risk of fraud, extortion, identity theft, and other harms caused by the unauthorized disclosure of their PII—risks which may last for the rest of their lives. Consequently, Plaintiff and Class members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes.

10.    Plaintiff brings claims for negligence, negligence *per se*, unjust enrichment, and breach of implied contract, seeking damages and injunctive relief, including the adoption of reasonably sufficient data security practices to safeguard the PII in Defendant's possession in order to prevent incidents like the Data Breach from reoccurring in the future.

## II.  PARTIES

11.    Plaintiff Lauren Pietrangelo, at all relevant times, is a citizen of the State of New Jersey and a resident of Essex County.

12.    Defendant Mavis is a Delaware limited liability company, headquartered in New York and maintaining a principal place of business at 358 Saw Mill River Road, Millwood, Westchester County, New York, 10546.

## III.  JURISDICTION AND VENUE

13.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d), because Plaintiff and at least one member of the Class, as defined below, are citizens of a different

state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

14.     This Court has general personal jurisdiction over Defendant because Mavis's principal place of business is located in this District, Defendant regularly conducts business in this District, and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

15.     Venue is proper under 28 U.S.C. § 1391(a)(2), (b)(1)-(3), and (c)(2) because Defendant's principal place of business is located in this District, Defendant conducts substantial business in this District, and a substantial part of the events giving rise to the claims emanated from activities within this District.

## IV.  FACTUAL ALLEGATIONS

### A.  Defendant's Business

16.     Founded in 1949 in Westchester County, New York, Defendant is now a national leader in tire and automotive services, specializing in tire distribution and various automotive repair and maintenance services such as oil changes, brakes, alignments, batteries, suspensions, exhaust work, and state inspections.[5]

17.     In order to purchase products and services from Defendant, Plaintiff and Class Members were required to provide Defendant with their sensitive and confidential Private Information.

18.     In the ordinary course of its business, Defendant collects and maintains the Private Information of its current and former customers including but not limited to:

---

[5] Our Story, MAVIS TIRE (2025), https://www.mavis.com/about-us/ (last visited Oct. 20, 2025).

4

identifiers and contact information, such as name, postal address, email address, telephone number, and driver's license number or state ID card number; username and password; demographic information, such as your age, date of birth, or gender; information about your interests and preferences; geolocation data (in connection with certain features of our Services); vehicle information, such as Vehicle Identification Number, make and model, service history, odometer readings, license plate number, and issuing jurisdiction; transaction and billing data, such as payment card number, expiration date, authorization number or security code, and billing address; commercial information, including records of products or services purchased, obtained . . . [6]

19.     Defendant made promises and representations to Plaintiff and Class Members, that the PII it solicited and collected from them would be kept safe and confidential, that the privacy of their information would be maintained, and that Defendant would "take reasonable precautions . . . including . . . physical, electronic and procedural measures" to protect Plaintiff's and Class Members' Private Information from unauthorized access and disclosure.[7]

20.     Plaintiff and Class Members had the reasonable expectation that Defendant would comply with its obligations related to their PII. Defendant owed Plaintiff and Class Members a duty to provide reasonable security, consistent with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected their PII.

21.     Defendant failed to comply with its obligations, resulting in the Data Breach.

---

[6] *See* Privacy Policy, Personal Information We Collect, MAVIS TIRE (Feb. 4, 2025), https://www.mavis.com/privacy-policy/ (last visited Oct. 20, 2025).

[7] Mavis Tire Puts the Brakes on Ransomware Attacks, SONICWALL (2018), https://www.sonicwall.com/resources/case-studies/mavis-tire-puts-the-brakes-on-ransomware-attacks (last visited Oct. 20, 2025).

**B.  The Data Breach**

22.     On or around September 23, 2025, Defendant was the victim of a ransomware attack by the internationally known group of cybercriminals, Wordleaks.[8]

23.     Following the Data Breach, the Worldleaks posted an extortion notice stating that, "[w]e have obtained sensitive data from Mavis Tire Supply. If you wish to avoid public exposure, contact us immediately."[9]

24.     Despite this overt threat, Defendant has not yet issued any public statement and has  failed to notify Plaintiff and Class Members of the Data Breach.

25.     Defendant has provided no assurances that all personal data has been either recovered or destroyed or that the company has sufficiently improved its data security practices to the extent necessary to avoid a future similar intrusion into its systems.

26.     Class Members now face years of constant surveillance of their financial and personal records.

**C.  The Value of Private Information and Effects of Unauthorized Disclosure**

27.     Mavis was well aware that the protected PII which they acquire is highly sensitive and of significant value to those who would use it for wrongful, nefarious purposes.

28.     Mavis also knew that a breach of their computer systems, and exposure of the PII therein, would result in the increased risk of identity theft and fraud against the individuals whose PII was compromised.

---

[8] Ransomware Group Worldleaks Hits: Mavis Tire Supply, HOOKPHISH (Oct. 20, 2025), https://www.hookphish.com/blog/ransomware-group-worldleaks-hits-mavis-tire-supply (last visited Oct. 20, 2025).

[9] Worldleaks Ransomware Targets Mavis Tire Supply, DeXpose (Oct. 20, 2025), https://www.dexpose.io/worldleaks-ransomware-targets-mavis-tire-supply/ (last visited on Oct. 20, 2025).

29.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[10] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[11]

30.    The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web.

31.    Numerous sources cite dark web pricing for stolen identity credentials.[12] For example, Private Information can be sold at a price ranging from $40 to $200.[13] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[14]

32.    Identity thieves use stolen Private Information for a variety of crimes, including credit card fraud, phone or utilities fraud, extortion, and bank/finance fraud.

33.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

---

[10] 17 C.F.R. § 248.201 (2013).

[11] *Id.*

[12] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Oct. 20, 2025).

[13] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Oct. 20, 2025).

[14] *In the Dark*, VPNOverview, 2019, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Oct. 20, 2025).

34.     Victims of identity theft also often suffer embarrassment, extortion, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

35.     Moreover, the fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office (" GAO") , which conducted a study regarding data breaches:[15]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

36.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—names, dates of birth, and PHI.

**D.  Defendant Failed to Comply with FTC Guidelines and Industry Best Practices**

37.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be a factor in all business decision-making.

38.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of

---

[15] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf (last visited Oct. 20, 2025).

personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[16] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and, have a response plan ready in the event of a breach.[17]

39.    The FTC further recommends that companies not maintain PII longer than necessary for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

40.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

41.    Defendant failed to properly implement basic data security practices.

---

[16] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited Oct. 20, 2025).

[17] *Id.*

42.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

43.     Defendant was at all times fully aware of their obligation to protect the Private Information of consumers. Defendant was also aware of the significant repercussions that would result from their failure to do so.

**E.  Defendant Failed to Comply with Industry Standards**

44.     As shown above, experts studying cybersecurity routinely identify financial services providers and partners as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

45.     Several best practices have been identified that at a minimum should be implemented by financial service providers like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

46.     Other best cybersecurity practices that are standard in the financial industry include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

**F.  Plaintiff and Class Members Suffered Damages**

47.     Given the sensitivity of the Private Information involved in this Data Breach, Plaintiff and Class Members have all suffered damages and will face a substantial risk of additional injuries for years to come, if not the rest of their lives. Defendant has done nothing to compensate

10

Plaintiff or Class Members for many of the injuries they have already suffered. Defendant has not demonstrated any efforts to prevent additional harm from befalling Plaintiff and Class Members as a result of the Data Breach.

48.     Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

49.     Since learning of the Data Breach, Plaintiff has spent time dealing with the impact of the Data Breach, valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation.

50.     Due to the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. This includes changing passwords, cancelling credit and debit cards, and monitoring her accounts for fraudulent activity.

51.     Plaintiff's and Class Members' Private Information was compromised as a direct and proximate result of the Data Breach.

52.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

53.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to spend time dealing with the effects of the Data Breach.

54.     Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

55.     Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on Plaintiff's and Class Members' Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

56.     Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

57.     Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in similar cases.

58.     Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiff and Class Members overpaid for a service that was intended to be accompanied by adequate data security that complied with industry standards but was not. Part of the price Plaintiff and Class Members paid to Defendant was intended to be used by Defendant to fund adequate security of its computer system(s) and Plaintiff's and Class Members' Private Information. Thus, Plaintiff and Class Members did not get what they paid for and agreed to.

59.     Plaintiff and Class Members have spent and will continue to spend significant amounts of time monitoring their accounts and sensitive information for misuse.

60.     Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

    a.  Reviewing and monitoring sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

b. Purchasing credit monitoring and identity theft prevention;

c. Placing "freezes" and "alerts" with reporting agencies;

d. Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

e. Contacting financial institutions and closing or modifying financial accounts; and

f. Closely reviewing and monitoring bank accounts, and credit reports for unauthorized activity for years to come.

61.     Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing Private Information is not accessible online and that access to such data is password protected.

62.     Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their Private Information—which contains the most intimate details about a person's life—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

63.     As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, loss of time, loss of privacy, and are at an increased risk of future harm.

**G.  Plaintiff Pietrangelo's Experience**

64.     Plaintiff Pietrangelo is a customer of Defendant.

65.     In order to utilize Defendant's services, Plaintiff Pietrangelo was required to entrust Mavis with her PII. In collecting and maintaining Plaintiff's PII, Defendant undertook a duty to act reasonably in its handling of Plaintiff's PII. Mavis, however, did not take reasonable

care of Plaintiff's PII, leading to its exposure and compromise as a direct result of Defendant's inadequate data security measures.

66.     Plaintiff is very careful about sharing her sensitive PII. Plaintiff stores any documents containing her PII in a safe and secure location. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

67.     Plaintiff provided her PII to Defendant with the reasonable expectation and mutual understanding that Defendant would use reasonable measures to protect her PII, in accordance with state and federal law and the data security promises posted on Defendant's public-facing website

68.     Since learning of the Data Breach, Plaintiff has been required to spend her valuable time and effort taking steps to avoid potential scams attempting to gain access to her accounts and mitigate the risk of misuse of her PII. Specifically, Plaintiff has been required to spend her valuable time and effort monitoring her financial and credit monitoring accounts. Plaintiff would not have had to engage in these time-intensive efforts but for the Data Breach.

69.     Plaintiff has suffered actual injury from having her PII exposed and/or stolen as a result of the Data Breach, including: (a) mitigation efforts to prevent scammers accessing her account; (b) mitigation efforts to prevent the misuse of her PII; (c) damages to and diminution of the value of her PII, a form of intangible property that loses value when it falls into the hands of criminals who are using that information for fraud or publishing the information for sale on the dark web; and (d) loss of privacy.

70.     Given the nature of the information compromised in the Data Breach and the propensity of criminals to use such information to commit a wide variety of crimes, Plaintiff faces

a significant, present, and ongoing risk of scams, identity theft and fraud, and other identity-related fraud now and into the indefinite future.

71.     In addition, knowing that hackers have gained access to her PII and that this information likely has been and will be used in the future for scams, identity theft, fraud, and other nefarious purposes has caused Plaintiff to experience significant frustration, anxiety, worry, stress, and fear.

## V.    CLASS ACTION ALLEGATIONS

72.     Plaintiff brings this nationwide class action on behalf of herself and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4).

73.     The Class that Plaintiff seeks to represent is defined as follows:

> All individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach (the "Class").

74.      Excluded from the proposed Class is Defendant, its subsidiaries and affiliates, their officers, directors, and members of their officers' and directors' immediate families, any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of those judicial officers' immediate families.

75.     Plaintiff reserves the right to modify or amend the definition of the proposed Class prior to moving for class certification.

76.     **Numerosity.** The Class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective Class members through this class action will benefit both the parties and this Court. The exact size of the Class and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to, the files implicated in

the Data Breach. Upon information and belief, the Class, at minimum, comprises over a million individuals.[18]

77.    **Commonality.** This action involves questions of law and fact that are common to Plaintiff and the Class members. Such common questions include, but are not limited to:

- whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class members;

- whether Defendant was negligent in collecting and storing Plaintiff's and Class members' PII;

- whether Defendant had duties not to disclose the PII of Plaintiff and Class members to unauthorized third parties;

- whether Defendant took reasonable steps and measures to safeguard Plaintiff's and Class members' PII;

- whether Defendant failed to adequately safeguard the PII of Plaintiff and Class members;

- whether Defendant breached its duties to exercise reasonable care in handling Plaintiff's and Class members' PII;

- whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

- whether Plaintiff and Class members are entitled to damages as a result of Defendant's wrongful conduct; and

- whether Plaintiff and Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

78.    **Typicality.** Plaintiff's claims are typical of the claims of the Class members. The claims of Plaintiff and Class members are based on the same legal theories and arise from the same failure by Defendant to safeguard their PII. Plaintiff and Class members entrusted Defendant with their PII, and it was subsequently accessed by an unauthorized third party.

---

[18] Abrams, *supra* note 15.

79.    **Adequacy of Representation.** Plaintiff is an  adequate representative of the proposed Class because her interests do not conflict with the interests of the other Class members Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; Plaintiff intends to prosecute this action vigorously; and Plaintiff's counsel has adequate financial means to vigorously pursue this action and ensure the interests of the proposed Class will not be harmed. Furthermore, the interests of the Class members will be fairly and adequately protected and represented by Plaintiff and Plaintiff's counsel.

80.    **Superiority.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the proposed Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

81.    **Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages is common to Plaintiff and each member of the proposed Class. If Defendant breached its duties and released Plaintiff's and Class members' PII, then Plaintiff and each Class member suffered damages by that conduct.

82.    **Ascertainability:**    Members of the proposed Class are ascertainable. Class membership is defined using objective criteria, and Class members may be readily identified through Defendant's books and records.

## VI.    CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class)**

83.    Plaintiff restates and realleges all preceding allegations above as if fully set forth herein.

84.    Defendant owed a duty under common law to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

85.    Specifically, this duty included, among other things: (a) designing, maintaining, and testing Defendant's cloud-based systems to ensure that Plaintiff's and Class members' PII in Defendant's possession was adequately secured and protected; (b) implementing processes that would detect a breach of their security system in a timely manner; (c) timely acting upon warnings and alerts, including those generated by their own security systems, regarding intrusions to their networks; and (d) maintaining data security measures consistent with industry standards.

86.    Mavis's duty to use reasonable care arose from several sources, including, but not limited to, those described below.

87.    Defendant had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class members were the foreseeable and probable victims of any inadequate security practices on the part of Defendant. By collecting and storing valuable PII

that is routinely targeted by criminals for unauthorized access, Mavis was obligated to act with reasonable care to protect against these foreseeable threats.

88.     Defendant also owed a common law duty because their conduct created a foreseeable risk of harm to Plaintiff and Class members. Mavis's conduct included their failure to adequately restrict access to their computer networks and/or servers that held individuals' PII.

89.     Defendant also knew or should have known of the inherent risk in collecting and storing massive amounts of PII, the importance of implementing adequate data security measures to protect that PII, and the frequency of cyberattacks, such as the Data Breach, in the financial sector.

90.     Defendant breached the duties owed to Plaintiff and Class members and thus were negligent. Mavis breached these duties by, among other things: (a) mismanaging their system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII; (b) mishandling their data security by failing to assess the sufficiency of their safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust their information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow their own privacy policies provided to customers; and (h) failing to adequately train and supervise employees and third-party vendors with access or credentials to systems and databases containing sensitive PII.

91.    But for Mavis's wrongful and negligent breach of their duties owed to Plaintiff and Class members, their PII would not have been accessed, exfiltrated, and compromised by cybercriminals.

92.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered injuries including:

      a.    theft of their PII;

      b.    costs associated with requesting credit freezes;

      c.    costs associated with the detection and prevention of identity theft;

      d.    costs associated with purchasing credit monitoring and identity theft protection services;

      e.    lowered credit scores resulting from credit inquiries following fraudulent activities;

      f.    costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach;

      g.    the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

      h.    damages to and diminution in value of their PII entrusted to Mavis with the mutual understanding that Defendant would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others; and

      i.    continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff and Class members.

93.    As a direct and proximate result of Mavis's negligence, including their gross negligence, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### NEGLIGENCE *PER SE*
### (On Behalf of Plaintiff and the Class)

94.     Plaintiff restates and realleges all preceding allegations above as if fully set forth herein.

95.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as Mavis for failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Defendant's duties.

96.     Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect customers' PII and not complying with the industry standards. Mavis's conduct was particularly unreasonable given the nature and amount of PII they obtained and stored and the foreseeable consequences of a data breach.

97.     Plaintiff and Class members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

98.     Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against. Indeed, the FTC has pursued over 50 enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class members.

99.     Mavis's violation of Section 5 of the FTC Act constitutes negligence *per se*.

100.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered injuries, including those identified in Paragraph 92 above.

101.    As a direct and proximate result of Mavis's negligence, Plaintiff and Class members have been injured as described herein and above, and are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

102.    Plaintiff restates and realleges all preceding allegations above as if fully set forth herein.

103.    Plaintiff and Class members conferred a monetary benefit on Mavis by providing them with their valuable PII.

104.    Mavis knew that Plaintiff and Class members conferred a benefit upon them and accepted and retained that benefit by accepting and retaining the PII entrusted to them. Defendant profited from Plaintiff's and Class members' PII and use of Plaintiff' and Class members' PII for business purposes.

105.    Defendant failed to secure Plaintiff's and Class members' PII and, therefore, did not fully compensate Plaintiff or Class members for the value that their PII provided.

106.    Mavis acquired the PII through inequitable record retention as they failed to disclose the inadequate data security practices previously alleged.

107.    If Plaintiff and Class members had known Defendant would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their PII, they would not have agreed to the entrustment of their PII to Defendant.

108.    Under the circumstances, it would be unjust for Mavis to be permitted to retain any of the benefits that Plaintiff and Class members conferred upon them.

109.    Plaintiff and Class members are without an adequate remedy at law.

110. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have suffered injuries, including those identified above.

111. Plaintiff and Class members are entitled to restitution and/or damages from Mavis and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from their wrongful conduct, as well as return of their sensitive PII and/or confirmation that it is secure. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class members may seek restitution or compensation.

**FOURTH CLAIM FOR RELIEF**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

112. Plaintiff restates and realleges all preceding allegations above as if fully set forth herein.

113. Plaintiff and the Class entrusted their Private Information to Defendant as a condition of purchasing products and obtaining services. In so doing, Plaintiff and the Class entered into implied contracts with Defendant, pursuant to which Defendant agreed to safeguard and protect Plaintiff's and Class Members' Private Information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached, compromised, or stolen.

114. At the time Defendant acquired the Private Information of Plaintiffs and the Class, there was a meeting of the minds and a mutual understanding that Defendant would safeguard the Private Information and not take unjustified risks when storing the Private Information.

115. Implicit in the agreements between Plaintiff and Class Members and Defendant was Defendant's obligation to: (a) use Plaintiff and Class Members' Private Information for business purposes only; (b) take reasonable steps to safeguard their Private Information; (c) prevent unauthorized access and disclosure of the Private Information; (d) provide Plaintiff and

Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information; and (e) retain the Private Information only under conditions that kept such information secure and confidential.

116.    Plaintiff and the Class would not have entrusted their Private Information to Defendant had they known that Defendant would not encrypt sensitive data elements, or delete the Private Information that Defendant no longer had a reasonable need to maintain.

117.    Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

118.    Defendant breached the implied contracts they made with Plaintiff and the Class by failing to safeguard and protect their Private Information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide timely and accurate notice to them that their Private Information had been compromised and stolen in the Data Breach.

119.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and Class Members have already suffered, and will continue to suffer, damages including, inter alia: (i) invasion of privacy; (ii) theft of their Private Information; (iii) actual and attempted misuse of the Private Information stolen in the Data Breach, including an increase in spam and phishing calls, texts, and emails; (iv) lost time, money, and opportunity costs associated with attempts to mitigate the actual consequences of the Data Breach; (v) lost or diminished value of their Private Information; (vi) loss of the benefit of their bargain; (vii) nominal damages; and (viii) the increased and continuing risk to their Private Information, which: (a) remains unencrypted and vulnerable to unauthorized access and abuse; and (b) remains backed up in

Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

120.     Plaintiff and the Class have suffered (and will continue to suffer): an ongoing and imminent threat of future identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual and attempted identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of their stolen Private Information; the illegal sale of the compromised data on the Dark Web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, lost work time; and other economic and non-economic harm.

121.     As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages to be determined at trial..

## VII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, pray for relief as follows:

A.     For an order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Class and Plaintiff' attorneys as Class Counsel to represent the Class;

B.     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C.     For damages in an amount to be determined by the trier of fact;

D.     For an order of restitution and all other forms of equitable monetary relief;

E.     Declaratory and injunctive relief as described herein;

F.     Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

G.     Awarding pre- and post-judgment interest on any amounts awarded; and

H.      Awarding such other and further relief as may be just and proper.

## VIII. JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial for all claims so triable.


Dated: October 22, 2025                          Respectfully submitted,

                                                 */s/ Linda P. Nussbaum*

                                                 Linda P. Nussbaum
                                                 **NUSSBAUM LAW GROUP, P.C.**
                                                 1133 Avenue of the Americas, 31st Floor
                                                 New York, NY 10036
                                                 Telephone: (917) 438-9189
                                                 Email: lnussbaum@nussbaumpc.com

                                                 Michael E. Criden*
                                                 Lindsey C. Grossman*
                                                 **CRIDEN & LOVE, P.A.**
                                                 7301 SW 57th Court, Suite 515
                                                 South Miami, Florida 33143
                                                 Telephone: 305-357-9000
                                                 Fax: 305-357-9050
                                                 Email: mcriden@cridenlove.com
                                                 Email: lgrossman@cridenlove.com

                                                 * Pro Hac Vice Application Forthcoming

                                                 *Attorneys for Plaintiff and the Proposed Class*